UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALICE M. BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:07-cv-1980-N |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on November 27, 2007. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On July 29, 2002, plaintiff Alice M. Brown ("Plaintiff" or "Brown") filed an application for disability insurance benefits and Supplemental Security Income ("SSI") claiming disability due to hepatitis C, high blood pressure, arthritis, a broken ankle and nerve and bladder problems. (Administrative Record (hereinafter "Tr.") at 60). She alleged a disability onset date of May 31, 1998 (Tr. at 60). At her first administrative hearing, Plaintiff amended her onset date to May 31, 2003. (Tr. at 336).

The Administrative Law Judge ("ALJ") conducted a hearing on October 18, 2005 at which Brown appeared with counsel. (Tr. at 317-348). Brown testified on her own behalf. The ALJ also heard testimony from Dr. Sterling Moore, a medical expert, Dr. Alvin Smith, also a medical expert, and Jerold Hildre, a vocational expert. (*Id.*). On November 23, 2005, the ALJ

found that Plaintiff was disabled during the closed period from May 31, 2003 through August 23, 2005 but not after that point. (Tr. at 281). Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on July 17, 2006, the Appeals Council granted her request and remanded her claim to the ALJ for reconsideration of her entitlement to benefits. (Tr. at 295-298). The ALJ held a second hearing on February 12, 2007 at which Brown appeared with counsel. (Tr. at 350-387) Brown again testified on her own behalf and the ALJ heard testimony from Dr. John Billinghurst, a medical expert, Dr. Beth Maxwell, a medical expert and Jerold Hildre, a vocational expert. (*Id.*). On March 21, 2007, the ALJ denied Plaintiff's claim, finding that there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. at 26). Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on August 16, 2007, the Appeals Council denied her request. Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed her federal complaint on November 27, 2007. Defendant filed an answer on February 5, 2008. On May 22, 2008, Plaintiff filed her brief, followed by Defendant's brief and motion to remand on July 15, 2008. Plaintiff filed her reply on August 4, 2008.

Standard of Review - Social Security Claims: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F. 2d 1022 (citations omitted). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 461(5th Cir. 2005).

Discussion: To prevail on a claim for disability insurance or SSI benefits, a claimant bears the burden of establishing that he or she is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505, 416.905(a). Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.

An ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Under the first four steps, a claimant has the burden of proving that her disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In this case, the ALJ proceeded to step five, finding that Plaintiff's chronic hepatitis C, left ankle fracture and history of polyarthralgias are severe impairments but that Plaintiff retains the residual functional capacity to perform jobs that exist in significant numbers in the national economy. (Tr. at 22-27). He therefore denied Plaintiff's request for benefits. (Tr. at 27).

In this case, both parties request a remand to the ALJ. A district court is authorized to remand a social security case under sentence four of 42 U.S.C. § 405(g), which provides that "the court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). Therefore, because the parties in this case seek a sentence four remand, the district court is required to enter a decision on the merits before remanding Plaintiff's claim to the Commissioner. *Istre v. Apfel*, 208 F.3d 517, 520 (5th Cir. 2000).

Background:

Brown was born on June 26, 1959. (Tr. at 54). She attended school through the tenth grade, quitting during her eleventh grade year. (Tr. at 66). In an August 23, 2005 examination performed by psychologist Dr. Grant Hellyer, Brown demonstrated reading skills at the second grade level. (Tr. at 262). Medical experts at both hearings testified that Brown is illiterate. (Tr. at 345, 383). Brown last worked as a private sitter, a low level semi-skilled job requiring light physical exertion. (Tr. at 344-345).

On May 31, 2003, Brown attempted suicide by taking an excessive dose of prescription medication. (Tr. at 218). She was examined at Doctors Hospital and administered charcoal (Tr. at 235-246). Brown was transferred to Green Oaks Behavioral Services and discharged at her

request with a prescription for Celexa, an antidepressant. (Tr. at 247-251). On June 2, 2003, she began outpatient treatment at Dallas MetroCare Services. (Tr. at 208-217). She reported that she was sad almost all day, felt worthless and hopeless, felt excessive guilt, and had decreased energy. (Tr. at 208). She stated that she had insomnia, slept most of the day, had very low energy and sometimes didn't "feel like getting up." (Tr. at 208, 215). She also reported that she may hear things sometimes and has problems with anxiety. (Tr. at 208). Staff psychiatrist Susan K. Watson diagnosed Brown with major depressive disorder, recurrent severe, rule out psychotic features. (Tr. at 202).

Brown continued weekly appointments with MetroCare from June 13, 2003 through August 25, 2003. (Tr. at 204-207). She returned to MetroCare on November 5, 2003 and reported feeling "pretty good" (Tr. at 198). She again returned on January 20, 2004. (Tr. at 202, 210-215). Dr. Watson saw Brown on March 2, 2004. Brown reported that she had been out of her medication for the past month and had been "hearing things" and seeing figures walking by, things running across the floor and feeling like someone was in her house. (Tr. at 197-198). She also reported having some suicidal thoughts and that she stayed home a lot. (Tr. at 197). Dr. Watson noted that Brown was experiencing auditory and visual hallucinations and paranoid delusions. (Tr. at 198). She prescribed her an anti-psychotic medication (Trilafon) and continued the anti-depressant (Celexa) at a higher dose. (Tr. at 198-199). Dr. Watson again noted a diagnosis of major depressive disorder, recurrent severe. (Tr. at 200). Staff psychiatrist Kristen Grable saw Brown on June 9, 2004. (Tr. at 197-200). Brown reported feeling depressed. (Tr. at 198). Dr. Grable discontinued Trilafon because Brown experienced nosebleeds and instead prescribed Navane, another anti-psychotic. (Tr. at 199).

On September 23, 2004, Brown saw MetroCare therapist Lindsay Hansborough. (Tr. at 194). At the time, she was not taking her medications as required. (Tr. at 194). She was neglecting herself unless her daughter forced her to eat, bathe or take care of herself. (Tr. at 194). She was socially isolated and did not leave her home unless it was absolutely necessary. (Tr. at 194). She could not pay her bills, had no income and her gas was turned off. (Tr. at 194). She described herself as "very hopeless" and reported that some of her depression symptoms were worsening. (Tr. at 194). On October 11, 2004, Plaintiff again saw therapist Hansborough and reported that she had been sleeping all day and didn't bother with daily activities like showering and eating. (Tr. at 192). Therapist Hansborough reported that Brown was not always taking her medications. (Tr. at 192). On October 26. 2004, Brown again met with Ms. Hansborough. She reported that Brown was "socially isolated" and "stays home all day." (Tr. at 190). On November 30, 2004, Brown reported that she had been caring for her grandson three days a week, which she enjoyed. (Tr. at 185). Ms. Hansborough encouraged Brown to spend more time with her grandson but reported that Brown was "socially isolated" and "gets very bored during the day and just sleeps for hours. This makes her depression worse." (Tr. at 185). On February 2, 2005, she reported feeling bored and depressed because of her isolation. (Tr. at 183). On February 16, 2005, Brown reported experiencing depressive symptoms and sought ways to cope with her feelings. (Tr. at 182). Additional medical records reflecting Brown's further treatment at Dallas MetroCare for the time period from October 14, 2004 through January 19, 2006 were submitted to the Appeals Council but were not included in the transcript of the proceedings filed with this court. (Tr. at 351). The list of exhibits indicates that those records (Exhibit 16F) are "not available." (Tr. at 5).

A consultative examination was performed by Medtex on May 16, 2005. (Tr. at 174). The examiner noted that Plaintiff has rheumatoid arthritis, an inability to care for herself, swelling in the left ankle and aches and pains in the shoulders and elbows. The examiner's impression was arthritis, most likely rheumatoid of the joints, especially the left ankle and right hand, and stiffness and unsteadiness of the back secondary to crippling arthritis, most likely rheumatoid. (Tr. at 175).

On August 23, 2005, Dr. Grant Hellyer, psychologist, examined Brown. Dr. Hellyer's diagnosis was major depressive disorder, single episode, mild to moderate. (Tr. at 262). He noted evidence of "a long history of alcohol and drug abuse which are in remission and depression which is not currently being treated." (Tr. at 262). He opined that Brown "may be experiencing an adjustment disorder with depressed mood as much of her depression seems related to situation." (Tr. at 262). He noted that Brown's reading ability tested at the second grade level, and her intelligence testing on the WAIS-III resulted in scores at the mentally retarded range of intelligence, although her stories on the Thematic Apperception Test (TAT) offered evidence of higher intellectual functioning. (Tr. at 261-262). He concluded that there is "evidence for depression, but not helplessness and hopelessness associated with severe depression." (Tr. at 262).

On September 6, 2005, Brown saw psychiatrist Shabbir Sherwala at Dallas Metrocare. (Tr. at 269). Brown reported feeling depressed, hearing voices, feeling helpless and hopeless. (Tr. at 269). She had been out of her medications for two or three months. (Tr. at 269). Dr. Sherwala prescribed Navane, the anti-psychotic previously prescribed for Brown, along with Paxil, an anti-depressant, and Xanax, an anti-anxiety medication. (Tr. at 269).

7

At the first hearing, medical expert Smith testified that Brown was disabled during the closed period from May 31, 2003 through August 23, 2005. (Tr. at 335). He testified that she met the listing for major affective disorder, major depression, severe recurrent with psychotic features during that time. (Tr. at 335). He noted her suicide attempt in May of 2003 and subsequent hospitalization and the fact that she continued to report psychotic symptoms up through November 24, 2004. (Tr. at 335). He noted that Dr. Hellyer, in his August 23, 2005 exam report, did not report psychotic symptoms and diagnosed her with mild to moderate depression, concluding that she could have "finally gotten some sustained benefit from her treatment." (Tr. at 335). He concluded that as of August 23, 2005, the date of Dr. Hellyer's exam, Brown regained the ability to perform unskilled work activity on a regular continuing basis. (Tr. at 336).

The ALJ issued his first decision on November 23, 2005. (Tr. at 274-282). He found that Brown suffered from severe impairments of hepatitis C, arthritis, and depression. (Tr. at 275). He found that her depression met listing 12.04 for the period of May 31, 2005 through August 23, 2005 and, therefore, she was disabled during that time. (Tr. at 275). In support of this finding, the ALJ discussed Brown's treatment at Dallas Metro Care services, Dr. Hellyer's August 23, 2005 evaluation, and the testimony of medical expert Smith. (Tr. at 276-78). He did not find that Brown was illiterate and found her capable of performing light work. (Tr. at 279-280). Based on the vocational expert's testimony, he found that beginning August 24, 2005, Brown was capable of making an adjustment to jobs that exist in significant number in the national economy and, therefore, was not disabled after that date. (Tr. at 280-281).

At the second hearing, held after the Appeals Council remanded Brown's claim, medical

8

expert and psychologist Beth Maxwell testified that Brown had major depressive disorder, recurrent, moderate. (Tr. at 378). She relied on Dr. Hellyer's report in reaching her conclusion. (Tr. at 379). Dr. Maxwell testified that Brown's depression did not have more than a minimal impact on her ability to do work activities and that her depression was a non-severe mental impairment. (Tr. at 379-380).

The ALJ issued his second decision on March 21, 2007. Relying solely on the testimony of medical expert Maxwell, the ALJ concluded that Plaintiff's depression was not a severe impairment. The ALJ disregarded the opinion of medical expert Smith from the first hearing and went on to conclude that, despite her severe impairments of chronic hepatitis C, left ankle fracture with decreased range of motion and a history of polyarthralgias, jobs exist in significant numbers in the national economy that Brown can perform. (Tr. at 26).

Findings and Conclusions:

Plaintiff claims two errors committed by the ALJ. Plaintiff first claims that the Medical-Vocational Guidelines or "Grid Rules" dictate a finding of "disabled" as of Brown's 45th birthday on June 26, 2004. Specifically, Brown cites to Grid Rule 201.17, which directs a finding of "disabled" for (i) a younger individual age 45-49; (ii) who is illiterate or unable to communicate in English; and (iii) who has previous work experience in the unskilled category or no previous work experience. 20 C.F.R. Pt. 404, Subpt. P., App. 2, Table No. 1, Rule 201.17. She also references Rule 200.00(h)(1), which states that "a finding of disabled is warranted for individuals age 45-49 who: (i) Are restricted to sedentary work, (ii) Are unskilled or have no transferable skills, (iii) Have no past relevant work or can no longer perform past relevant work, and (iv) Are unable to communicate in English, or are unable to speak and understand English

9

but are unable to read or write in English." 20 C.F.R. Pt. 404, Subpt. P., App. 2, Rule 200.00(h)(1).

It is undisputed that Brown reached the age of 45 on June 26, 2004. Additionally, the ALJ found that Plaintiff is "functionally illiterate." (Tr. at 26). Defendant asks the court to remand Plaintiff's claim to the ALJ "for further development because the record is unclear whether Brown is illiterate." Dr. Hellyer reported that Brown tested at a second grade reading level, despite the fact that she attended school until the eleventh grade. (Tr. at 262). Brown testified that her "reading is poorly" and that she is unable to fill out a job application for herself. (Tr. at 368-369). Medical experts Smith and Maxwell both testified that Brown's reading score demonstrates that she is illiterate. (Tr. at 345, 383). Therefore, substantial evidence supports the ALJ's decision in this regard.

Defendant next claims that Grid Rule 201.17 does not apply because the ALJ's residual functional capacity determination either does not limit Brown to sedentary work or is unsupported by substantial evidence and because Brown's past work was at the semi-skilled level. First, with respect to the ALJ's residual functional capacity determination, the ALJ found that Plaintiff could lift/carry 10 pounds frequently, and 20 pounds occasionally; stand/walk for 2 hours in an 8 hour workday and sit for 6 hours in an 8 hour workday, with the ability to stand/stretch at 30-45 minute intervals. (Tr. at 23). He further found that Brown could perform postural activities occasionally, but cannot work at heights. (Tr. at 23). Therefore, the ALJ found that Plaintiff did not have the capacity to perform the standing and walking requirements of light work, which requires a "good deal of walking or standing." 20 C.F.R. 404.1567(b); 416.967(b). These standing and walking limitations found by the ALJ place Brown in the

10

sedentary range of work.

Defendant claims the ALJ's decision is unclear in this regard because the ALJ referenced both sedentary and light work in his decision and medical experts Moore and Billinghurst testified that Brown had the RFC for light work. (Citing Tr. At 332-34, 377). The Commissioner requests a remand to clarify Brown's RFC. A remand is appropriate only if the ALJ's decision is not supported by substantial evidence or the ALJ did not apply the proper legal standards in evaluating the evidence. *Istre*, 208 F.3d at 520 (holding that district court must enter substantive ruling and may not merely remand for further consideration). At the second hearing before the ALJ, medical expert Billinghurst's testimony paralleled the ALJ's RFC. He testified that Brown could lift 20 pounds occasionally, 10 pounds frequently and stand and walk at least two hours and sit six hours or more with the ability to stand and stretch every 30-45 minutes. (Tr. at 377). Medical expert Moore testified at the first hearing that following her closed period of disability from May 31, 2003 to August 23, 2005, Brown retained the residual functional capacity to perform light work. (Tr. at 334). A medical source statement submitted by Brown and dated May 16, 2005, also supports the ALJ's RFC, noting that Brown could stand and/or walk less than 2 hours in an 8-hour workday and must periodically alternate sitting and standing. (Tr. at 176-178). Therefore, substantial evidence support's the ALJ's RFC determination.

The Commissioner is correct in pointing out that Brown's prior work as a private sitter was a semi-skilled position. However, under 20 C.F.R. § 404.1565(a), a claimant who cannot use the skills acquired through their previous work is considered to have an unskilled work background. *See also* 20 C.F.R. § 416.965(a). Sections 404.1565(a) and 416.965(a) state:

> If you have acquired skills through your past work, we consider
> you to have these work skills unless you cannot use them in other

> skilled or semi-skilled work that you can now do. If you cannot
> use your skills in other skilled or semi-skilled work, we will
> consider your work background the same as unskilled.

The ALJ did not make a finding as to whether Brown's skills acquired in her past work as a sitter are transferable to work she is now capable of performing. The ALJ concluded that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (Tr. at 26). This finding by the ALJ was in error. He should have determined whether the skills Brown acquired in her past work as a private sitter were transferable. If he had determined they were not, her past work would be considered unskilled and Grid Rule 201.17 would require a finding of "disabled."

The court must decide whether the issue of transferability of job skills must be remanded to the ALJ. Plaintiff asks the court to reverse the decision of the ALJ and render judgment for her, while the Commissioner asks the court to remand Brown's claim back to the ALJ for further consideration. The court can reverse the ALJ and direct that benefits be paid (as opposed to remanding for further proceedings) where additional fact finding by the ALJ is unnecessary to determine that a claimant is disabled under the Social Security Act. *See, e.g., Taylor v. Bowen*, 782 F.2d 1294, 1299 (5th Cir. 1986) (reversing decision of ALJ and directing an award of disability benefits); *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (a remand directing an award of benefits is appropriate where "given the available evidence, remand for additional fact-finding would [not] serve [any] useful purpose but would merely delay the receipt of benefits."); *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir.1993) (holding that an award of benefits is appropriate only where all factual issues have been resolved and "the record can yield

but one supportable conclusion.").

Additional fact-finding is unnecessary here. It is clear from the record that any skills acquired by Brown in her past work are not transferable to work she can perform with her present impairments. Of the jobs identified by the ALJ which Brown would be able to perform (bench assembler, optical goods assembler and hand mounter), all were sedentary, *unskilled* jobs and none involve skills she acquired in her past work as a private sitter. (Tr. at 27). In addition, the job of private sitter is a low level semi-skilled position. The Social Security Administration has determined that "[t]ransferability of skills is not usually found from this rather simple type of work" and, therefore, "[w]hen job activities are at this minimal level of skill, an adjudicator or administrative law judge (ALJ) can often, without assistance, make the determination that the worker has very little vocational advantage over an unskilled person and does not have transferable skills." SSR 82-41. Brown's claim has been before the ALJ twice and it has been almost seven years since she filed her claim for benefits. Another remand would delay resolution of her claim for months and "would be unfair to a plaintiff who has already endured needless delay." *Green v. Shalala*, 852 F. Supp. 558, 569 (N.D. Tex. 1994) (reversing decision of ALJ and directing that benefits be awarded on remand). Therefore, the magistrate judge finds that Brown does not have any transferable skills from her past work as a private sitter and, as a result, her past relevant work should be considered "unskilled" when evaluating Grid Rule 201.17. Under that rule, Brown was "disabled" as of her 45th birthday on June 26, 2004, the decision of the ALJ should be reversed, and the Secretary should be directed to award Brown benefits starting on that date.

With respect to the pre-June 26, 2004 period, Brown claims that the ALJ's finding that

13

she was "not disabled" due to depression for the closed period from May 31, 2003 through August 23, 2005 is not supported by substantial evidence. Brown again asks that the court reverse and remand for payment of benefits. As discussed above, the ALJ found that plaintiff's depression is not a severe impairment, relying on the testimony of medical expert Beth Maxwell at the second hearing. (Tr. at 22).

Medical expert Alvin Smith testified at the first hearing that plaintiff suffered from major affective disorder, major depression, severe recurrent with psychotic features. (Tr. at 335). He testified that she suffered a major episode when she attempted suicide in May of 2003 and continued to report psychotic symptoms up through November 24, 2004. (Tr. at 335). He further testified that when Dr. Hellyer examined Brown in August 2005, he did not find psychotic symptoms and diagnosed her with mild to moderate depression, indicating she could have received some benefit from her treatment with physicians and therapists at Dallas MetroCare. (Tr. at 335). Based on Dr. Hellyer's examination, Dr. Smith concluded that Plaintiff's condition had improved and, therefore, found she was not disabled after that date. (Tr. at 335-36).

In his first decision, the ALJ adopted Smith's testimony and found that Brown was disabled during the closed period from May 31, 2003 through August 23, 2005. However, in his second decision, which is now before the court, the ALJ disregarded Smith's testimony. Instead, he adopted the testimony of medical expert Maxwell, who opined that Brown's depression was not a severe mental impairment and, therefore, she was not disabled due to depression at any time during the relevant period. (Tr. at 22-23, 378-379). Dr. Maxwell stated that she reached her conclusion in reliance on Dr. Hellyer's report. (Tr. at 378-380). The ALJ stated in his

14

decision that he disregarded Dr. Smith's testimony solely because "he did not appear to place much weight in the only psychological evaluation contained in the record," referring to Dr. Hellyer's examination. Specifically, the ALJ found:

> At the prior hearing, Dr. Alvin Smith testified that the claimant had a major depressive disorder recurrent and severe with psychotic features during the closed period of disability of May 31, 2005 through August 23, 2005. It was his opinion that she thereafter had the minimum residual functional capacity for unskilled work with the sole limitation of no sustained public contact. He also noted that she was non-compliant with her medication regimen after the closed period. The sole reason why Dr. Smith's prior opinion is not adopted by the undersigned is that he did not appear to place much weight in the only psychological evaluation contained in the record, Exhibit 14F. In that evaluation, it was noted that the claimant complained of depression starting in 2003, the examiner rated her as having a mild to moderate level of depression (DSM-IV: 296.21-2), and the examiner said that much of her depression seemed to be related to her situation. This examiner's MAF was one that said that she was not severely impaired by major depression. All considered, I have to give greater weight to the opinion of this examining source than to the opinion of Dr. Smith, given these circumstances. Moreover, I note that the claimant testified that she has not used cocaine since April, 2005: this could explain why she previously displayed occasional psychotic features that apparently misled Dr. Smith. Given the sketchy nature of the record, I cannot say that her drug and/or alcohol use is material to the determination of her disability in this case.

(Tr. at 22-23, footnote).

The ALJ's decision is not supported by substantial evidence. First, the ALJ's stated reason for disregarding Dr. Smith's testimony is invalid. The ALJ appears to have perceived a conflict between Dr. Smith's testimony and Dr. Hellyer's report and to have concluded that Dr. Smith did not consider Dr. Hellyer's report in forming his opinion. However, Dr. Smith considered Dr. Hellyer's report and, in fact, relied on Dr. Hellyer's opinion in finding a closed

15

period of disability, concluding that Plaintiff's mental condition had improved such that she was no longer disabled as of the date of Dr. Hellyer's exam. (Tr. at 335-336).

Most importantly, there is no indication that Dr. Maxwell or the ALJ considered the examination records of Brown's treating physicians at Dallas MetroCare. Under the Social Security Regulations, opinions of treating physicians as to the nature and severity of a claimant's impairments are given controlling weight so long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). An ALJ may give less weight to a treating physician's opinion only when "there is good cause shown to the contrary . . ." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). An ALJ must perform a detailed analysis of the treating physician's opinion under the criteria set forth in the Regulations before rejecting the opinion. *Newton v. Apfel*, 109 F.3d 448, 453 (5th Cir. 2000). Those factors include the length of the treatment relationship, the nature and extent of the treatment relationship, the evidence supporting the opinion, and the specialty of the physician, among other considerations. 20 C.F.R. § 404.1527(d)(2)(i) and (ii). The ALJ may not summarily reject the treating physician's opinion based only on the testimony of a medical expert who has not examined the claimant. *Newton*, 209 F.3d at 458.

In this case, the ALJ disregarded examinations by Brown's treating physicians, specifically examinations by psychiatrists Susan Watson, Kristen Grable, and Shabbir Sherwala, and incorrectly described Dr. Hellyer's August 2005 consultative examination as "the only psychological examination in the record." (Tr. at 23, footnote). To the contrary, Dr. Watson at

16

Dallas MetroCare examined Brown on June 2, 2003 and March 2, 2004. (Tr. at 200, 202). On June 2, 2003, Dr. Watson reported that Brown slept during the day, had trouble sleeping during the night, and thought she may hear things sometimes, although she denied psychosis. (Tr. at 208). On March 2, 2004, Dr. Watson noted that Brown was experiencing auditory and visual hallucinations and paranoid delusions. (Tr. at 198). After both exams, Dr. Watson diagnosed Brown with major depressive disorder, recurrent severe. (Tr. at 200, 202). Psychiatrist Kristen Grable examined Brown on June 9, 2004. (Tr. at 199). She described Brown as having major depressive disorder, single episode with psychotic features and prescribed an anti-psychotic medication. (Tr. at 200). On September 6, 2005, Dr. Sherwala examined Brown and prescribed the same anti-psychotic medication, along with an anti-depressant and an anti-anxiety medication. (Tr. at 269). These examinations are in line with the testimony by medical expert Smith and support a finding of a closed period of disability up to the date of Dr. Hellyer's examination.

The ALJ erred in relying upon Dr. Maxwell's testimony. Dr. Maxwell relied upon Dr. Hellyer's report, which addressed only Brown's mental status on August 23, 2005 and did not address her depression before that date. When asked by Brown's attorney whether she had considered treatment records from Dallas MetroCare, Dr. Maxwell stated that she had not ignored them. (Tr. at 380). However, she did not discuss Brown's treatment at Dallas MetroCare or the conclusions reached by her treating physicians there during the time period before Dr. Hellyer's examination.

The ALJ's decision that Brown's depression is not a severe impairment and that she was not disabled during the closed period from May 31, 2003 to August 23, 2005 is not supported by

17

substantial evidence in light of the examinations by Brown's treating physicians, which are entitled to controlling weight, and the testimony of medical expert Smith. Neither the ALJ's decision nor Dr. Maxwell's testimony is supported by the medical evidence in the record. The ALJ may not, without engaging in a detailed analysis, reject Brown's treating physicians' statements. In addition, the ALJ erred in failing to evaluate the severity of Brown's impairment under the standard enunciated by the Fifth Circuit in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), which held that "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Aside from Dr. Maxwell's testimony, nothing else in the record supports the ALJ's conclusion that Brown's depression was a non-severe, non-disabling impairment with respect to the time period before Dr. Hellyer's exam in August of 2005. Therefore, the ALJ's decision must be reversed in this regard.

The Commissioner seeks a remand to the ALJ to reevaluate Dr. Smith's opinion "in light of the objective findings reported by Brown's treating psychiatrists and therapists at Dallas MetroCare Services." Brown asks that the court direct an award of benefits. The magistrate judge finds that additional fact finding by the ALJ is unnecessary, especially in light of the nearly seven year delay in adjudicating Brown's claim for benefits. Considering the objective medical evidence in the record and giving controlling weight to the records from Brown's treating physicians, Brown's depression was a severe impairment and entitled her to a closed period of disability from May 31, 2003 to August 23, 2005.

**RECOMMENDATION**:

For the reasons discussed above, the magistrate judge recommends that the decision of the ALJ be reversed and remanded. The magistrate judge further recommends that Plaintiff be found disabled as of May 31, 2003 and that the Commissioner be instructed to pay Plaintiff disability benefits effective May 31, 2003.

Signed this 16th day of March, 2009.

_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE


NOTICE
In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.